**Juan AYALA, Appellant**

v.

**Blanca Edit AYALA, Appellee.**

No. 01–09–00785–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 2011.

Rehearing Overruled Aug. 26, 2011.

Kelly C. Heallen, Craig & Heallen, L.L.P., Claudia P. Avalos, Avalos & Associates, Houston, TX, for Appellant.

Timothy A. Hootman, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

In this restricted appeal, appellant, Juan Ayala (Juan), appeals from a default divorce decree dissolving his marriage to appellee, Blanca Edit Ayala (Blanca). In nine issues, Juan contends that (1) he is entitled to review by restricted appeal and that the evidence is insufficient to support: (2) the imposition of retroactive child support; (3) the assessment of child support; (4) the imposition and assessment of spousal maintenance; (5) the grant of sole managing conservatorship in favor of Blanca; (6) the trial court's property division; (7) the award of attorney's fees; (8) the grant of divorce on the grounds of cruelty and adultery; and (9) the amount of monthly child support and spousal support payments. We affirm.

## Background

Blanca and Juan were married in 1985. They had four children together during their marriage. Blanca and Juan separated in 1998, and from then on he lived with another woman. Blanca remained in their home, paying all the bills and raising the children with no financial help from Juan. Blanca is diabetic and blind and has had to look to her children for help with the home expenses because she is unable to work.

In March 2008, Blanca filed for a divorce from Juan. By that time, the only minor child left in the home was F.A., age fourteen. Following entry of a series of temporary orders and a hearing in July 2008, the trial court entered an agreed temporary order that awarded sole managing conservatorship of F.A. to Blanca. The agreed order also awarded Blanca temporary support of $150.00 per week, possession of the couple's home, and visitation as agreed by the parties, and it continued all injunctions listed in the immediately prior temporary restraining order. The trial court also entered an agreed injunction against Juan's going to the family home.

In October 2008, Juan counter-petitioned for divorce. The case was set for trial in November 2008, then re-set by agreement of the parties for March 27, 2009. Blanca and her attorney appeared for trial on that date. Neither Juan nor his attorney was present. Blanca presented evidence that Juan had notice of the hearing. The trial court held a default hearing, after which it rendered its decision, granting a default judgment to Blanca.

The final decree granted the divorce on grounds of insupportability, cruelty, and adultery; assessed child support at a rate of $650 a month; imposed a judgment against Juan for retroactive child support in the amount of $61,498, to be paid at $150 a month; imposed spousal support for three years at a rate of $780 per month; awarded Blanca her attorney's fees; divided the parties' marital estate; and named Blanca as sole managing conservator of F.A., with visitation as mutually agreed upon. The trial court signed the final decree of divorce on April 28, 2009.

Four months later, after not filing any post-judgment motions or notice of appeal, Juan filed a notice of restricted appeal from this judgment.

## Restricted Appeal

In his first issue, Juan contends that he is entitled to a restricted appeal from the trial court's final decree of divorce. Juan's second through eighth issues challenge the sufficiency of the evidence to support the judgment. Juan claims that the record reveals on its face that there is insufficient evidence to support several aspects of the trial court's judgment and that, therefore, the trial court abused its discretion in making its judgment. His ninth issue con-

tends, in the alternative, that the trial court erred in assessing child support and spousal support payments in excess of 50% of his net monthly income.

We construe Juan's contentions as one issue with eight sub-parts—whether the trial court abused its discretion in entering the final decree of divorce because the evidence was insufficient to support the judgment.

## Standard of Review

A restricted appeal is a procedural device available to a party who did not participate, either in person or through counsel, in a proceeding that resulted in a judgment against the party. TEX.R.APP. P. 30. It constitutes a direct attack on a default judgment. *Id.; Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 943 (Tex.1991). A party filing a restricted appeal must demonstrate that (1) he appealed within six months after the judgment was rendered, (2) he was a party to the suit, (3) he did not participate in the actual trial of the case that resulted in the judgment complained of, (4) he did not timely file a post-judgment motion, a request for findings of facts and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(c) of the Texas Rules of Appellate Procedure, and (5) error appears on the face of the record. *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex.2004); *Vazquez v. Vazquez*, 292 S.W.3d 80, 83 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *Barry v. Barry*, 193 S.W.3d 72, 74 (Tex.App.-Houston [1st Dist.] 2006, no pet.). The face of the record includes all papers on file in the appeal, including the clerk's record and any reporter's record. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex.1997); *DSC Fin. Corp. v. Moffitt*, 815 S.W.2d 551, 551 (Tex. 1991); *Vazquez*, 292 S.W.3d at 83.

In a suit for divorce, the petition is not taken as confessed if the respondent does not file an answer. *Vazquez*, 292 S.W.3d at 83 (citing TEX. FAM.CODE ANN. § 6.701 (Vernon 1998)). Therefore, if the respondent in a divorce case fails to answer or appear, the petitioner must still present evidence to support the material allegations in the petition. *Id.* at 83–84. Because a restricted appeal affords an appellant the same scope of review as an ordinary appeal, the appellant may challenge the legal and factual sufficiency of the record. *See Norman Commc'ns*, 955 S.W.2d at 270; *Miles v. Peacock*, 229 S.W.3d 384, 386–87 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *see also Vazquez*, 292 S.W.3d at 83–84 (holding that default judgment granting divorce is subject to evidentiary attack on appeal).

Most of the appealable issues in a family law case are evaluated under an abuse of discretion standard. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex.App.-Dallas 2009, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Miles*, 229 S.W.3d at 388. Under this standard, legal and factual sufficiency of the evidence are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex.App.-Houston [1st Dist.] 2008, no pet.). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment. *Id.*

In reviewing a no-evidence issue, we consider only the evidence and inferences tending to support the trial court's findings, and we disregard all contrary

evidence and inferences. *See Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003); *Vazquez,* 292 S.W.3d at 83 (applying standard to restricted appeal from default divorce decree); *Barry,* 193 S.W.3d at 75. Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. *Vazquez,* 292 S.W.3d at 83. When we review a factual sufficiency challenge, we conduct a neutral review of all the evidence. *Barry,* 193 S.W.3d at 75. We will reverse for factual insufficiency only if the ruling is so against the great weight and preponderance of the evidence as to render it manifestly erroneous or unjust. *Id.*

### Juan's Sub–Issues

#### 1. *Evidence to Support Retroactive Child Support Judgment*

In his second issue, Juan claims that the evidence is insufficient to support the trial court's award of $61,498 as retroactive child support.

A trial court may order a parent to pay retroactive child support. TEX. FAM.CODE ANN. §§ 154.009, 154.131 (Vernon 2008). In doing so, the court shall apply the child support guidelines. *Id.* § 154.009(b). It shall consider the net resources of the obligor during the relevant time period. *Id.* § 154.131(b). It shall also consider whether (1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity; (2) the obligor had knowledge of his paternity or probable paternity; (3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and (4) the obligor has provided actual support or other necessaries before the filing of the action. *Id.* § 154.131(b). It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of sup-port that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child. *See id.* § 154.131(c). This presumption may be rebutted by evidence that (1) the obligor knew or should have known that he was the father of the child for whom support is sought and (2) he sought to avoid the establishment of a support obligation for the child. *Id.* § 154.131(d)(1)-(2).

The Family Code instructs the trial court to calculate net resources for the purposes of determining child support liability. *Id.* § 154.062 (Vernon 2008). Accordingly, there must be some evidence of a substantive and probative character of net resources in order for the court to discharge this duty. *Newberry v. Bohn–Newberry,* 146 S.W.3d 233, 236 (Tex.App.-Houston [14th Dist] 2004, no pet.). A trial court has broad discretion to award an amount other than that established by the child support guidelines, but only if the evidence rebuts the presumption that the application of the guidelines is in the best interest of the child. *See* TEX. FAM.CODE ANN. § 154.123(a) (Vernon 2008). In determining whether application of the guidelines would be unjust, the court must consider evidence of all relevant factors, including, among others, the age and needs of the child, the ability of the parents to contribute to the support of the child, including earnings and the amount of spousal maintenance currently being paid, any financial resources available for the support of the child, and any special or extraordinary educational, healthcare, or other expenses of the parties or of the child. *Id.* § 154.123(b). Courts may calculate net resources on "imprecise information." *See In re J.C.K.,* 143 S.W.3d 131, 139 (Tex.App.-Waco 2004, no pet.). The trial court has broad discretion in setting child support, including retroactive sup-

port, and its decision will not be overturned absent a clear abuse of discretion. *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex. App.-Houston [14th Dist.] 1992, writ denied). If there is some evidence of a substantive and probative character to support the trial court's judgment concerning retroactive child support, the trial court did not abuse its discretion. *Newberry*, 146 S.W.3d at 235.

■ Here, the trial court found that Juan's gross monthly income was $3,900, and that his gross annual income was $48,000. Blanca testified that Juan was earning $750 a week in 2008 and that he had been employed at the same place and in the same capacity for 30 years at the time of the divorce hearing, and she provided evidence that Juan's monthly salary was $3,250 at the time of trial. She also testified that Juan had never paid child support since leaving the family home in December 1998. This evidence supports the court's award of retroactive child support. *See id.* at 235–36 (holding that "the trial court heard uncontroverted evidence that appellant earns $150,000 a year; thus, there is some evidence to support the trial court's implied finding that appellant earns

more than $6,000 per month" when wife testified that it was "fair to say [my] husband makes $150,000 a year").[1]

We conclude that the trial court did not abuse its discretion in awarding retroactive child support. Therefore, we overrule Juan's second issue.

### 2. Evidence to Support the Trial Court's Assessment of Child Support

In his third issue, Juan asserts that the evidence is insufficient to support the trial court's assessment of child support.

Under the Family Code, the amount of a child support payment established by the child support guidelines in effect at the time of a hearing to establish child support is presumed to be reasonable, and an order of support conforming to those guidelines is presumed to be in the best interest of the child. *See* TEX. FAM.CODE ANN. § 154.123; *Sanchez v. Sanchez*, 915 S.W.2d 99, 102–03 (Tex.App.-San Antonio 1996, no writ).

■ Blanca offered evidence that F.A. was fourteen years old and covered by Medicaid. Blanca also testified that she herself was diabetic and blind and there-

---

1. The dissent cites *Flores v. Cuevas*, No. 01–06–00257–CV, 2007 WL 624716 (Tex.App.-Houston [1st Dist.] Mar. 1, 2007, no pet.) (mem. op.), among other cases, to support its argument that the evidence was insufficient to establish Juan's income during the relevant time period. In *Flores*, this Court held that an award of retroactive child support was an abuse of discretion because there was "no evidence [of the father's resources] pertaining to the relevant time period." 2007 WL 624716, at *4. However, this case is distinguishable from *Flores* because Blanca testified that Juan had been employed at the same place and in the same capacity for the entire relevant time period. Thus, her testimony constitutes some evidence of Juan's resources during the relevant time period. *See In re J.C.K.*, 143 S.W.3d 131, 139 (Tex.App.-Waco 2004, no pet.) (holding that courts can calculate net resources on "imprecise informa-

tion"); *In re Sanders*, 159 S.W.3d 797, 800–01 (Tex.App.-Amarillo 2005, no pet.) (holding that compliance with child support guidelines is not mandatory in awarding retroactive child support, but court must nevertheless "consider" net resources during relevant time period and several other factors). Thus, because there is some evidence, we cannot conclude that the trial court abused its broad discretion in setting retroactive child support. *See Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 235 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that trial court did not abuse its discretion if there is some evidence of a substantive and probative character to support trial court's judgment concerning retroactive child support); *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (holding trial court has broad discretion in setting child support, including retroactive support).

fore could not work. She also offered evidence that the court's temporary orders, signed in July 2008, had awarded her $150 per week and that, at that time, Juan was working at the same place and in the same capacity as at the time of the divorce hearing, as he had been for more than 30 years. This evidence, coupled with Blanca's uncontroverted testimony of Juan's total income, is sufficient to support the trial court's finding of $150 a week—or $650 a month—for child support.

We overrule Juan's third issue.

### 3. Evidence to Support the Trial Court's Assessment of Spousal Support

In his fourth issue, Juan claims that the evidence was insufficient to support the trial court's imposition and assessment of spousal maintenance.

■ Section 8.051 of the Family Code provides, in pertinent part, that the trial court may award up to three years' spousal maintenance to a party when the marriage has lasted at least ten years, the spouse seeking maintenance lacks sufficient property to provide for her minimum needs, and she is unable to support herself because of an incapacitating physical disability. See TEX. FAM.CODE ANN. §§ 8.051, 8.054(a)(1) (Vernon 2006). The amount of maintenance is to be determined according to the "minimum reasonable needs of the obligee, considering employment or property received in the dissolution of the marriage or otherwise owned by the obligee that contributes to the minimum reasonable needs of the obligee." Id. § 8.055 (Vernon 2006). The court is to determine the nature, amount, duration, and manner of the spousal support by considering "all relevant factors." See id. § 8.052 (Vernon 2006). These factors include the financial resources of the parties, the division of property, the education and employment skills of the spouses, the duration of the marriage, the earning ability and physical

and emotional condition of the spouse, and the comparative financial resources of the spouses. Id. A former spouse's serious physical condition or inability to support herself is a proper basis for an order of spousal maintenance. Id. §§ 8.051, 8.054(a)(2)(A); see Brooks v. Brooks, 257 S.W.3d 418, 424–25 (Tex.App.-Fort Worth 2008, pet. denied). We review the award of spousal maintenance under an abuse of discretion standard. Pickens v. Pickens, 62 S.W.3d 212, 214 (Tex.App.-Dallas 2001, pet. denied).

Juan challenges the court's award of spousal support on the basis that there was no evidence of (1) Blanca's "minimum reasonable needs" and (2) the value of the community estate, and, thus, the trial court could not have properly considered the property distributed to her in making its spousal support determination.

■ The trial court heard testimony that the marriage lasted longer than ten years and that Blanca is diabetic and blind and has had to look to her children for help with the home expenses because she is unable to work. During that time, Blanca has raised the children and is still raising their daughter, F.A. The court also heard that, while Blanca is disabled and unemployed, Juan has been continuously employed for thirty years with the same employer.

This evidence speaks to the financial resources of Blanca; to her ability to seek employment; to the duration of the marriage; to Blanca's earning ability and physical condition; to Juan's ability to make support payments; to the comparative financial resources of the spouses; and to their comparative earning power. This is "more than a mere scintilla" of evidence as to Blanca's minimum reasonable needs. See Cooper v. Cooper, 176 S.W.3d 62, 63 (Tex.App.-Houston [1st

Dist.] 2004, no pet.); *Amos v. Amos*, 79 S.W.3d 747, 750 (Tex.App.-Corpus Christi 2002, no pet.) ("After reviewing the evidence presented, we find that the record contains evidence of the appellee's abilities, education, mortgage concerns, and business opportunities. Based on this evidence we hold that the trial court could properly determine the appellee's minimum reasonable needs.").

Juan also complains that the trial court did not hear evidence of the value of the property award that Blanca received in the divorce and, thus, the trial court could not have properly considered the property distributed to her in making its spousal support determination. *See* TEX. FAM.CODE ANN. § 8.051(2). This section requires a determination that the spouse seeking maintenance "lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs ..." *Id.* It does not require the court to know the dollar figure of the valuation of that property.

The trial court awarded Blanca the home in which she has lived at least since 1998, along with all its contents. The trial court heard evidence that Blanca is blind and cannot work and that she has had to look to her older children for help with basic bills. The trial court had sufficient evidence to make a determination that Blanca lacked sufficient property to provide for her minimum needs, even in the face of being awarded the house.

We overrule Juan's fourth issue.

### 4. Evidence to Support the Trial Court's Conservatorship Order

In his fifth issue, Juan claims that there is no evidence supporting the trial court's decision to name Blanca as sole managing conservator of F.A.

In determining conservatorship issues, the primary consideration of the trial court is the best interest of the child. *Vazquez*, 292 S.W.3d at 85. The trial court has wide latitude in determining the best interest of minor children. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). There is a rebuttable presumption that (1) the standard possession order is in the best interest of the child and (2) the appointment of the parents as joint managing conservators is in the best interest of the child. TEX. FAM.CODE ANN. §§ 153.252(2); 153.131(b) (Vernon 2008). Factors which may be considered when deciding the best interest of the child—the *Holley* factors—include: (1) the desire of the child; (2) the emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals involved; (5) the best interests of the child; (6) plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions of a parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omission of the parent. *Vazquez*, 292 S.W.3d at 85 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976)).

Here, there was no evidence that Juan had done anything to meet the emotional and physical needs of F.A. since leaving the family home in 1998, ten years prior to the divorce. Blanca presented evidence that, in 1998, when Juan left the marital home to live with another woman with whom he subsequently had a child, F.A. was four years old. From the time he left, he had failed to provide child support or to help with home expenses, despite evidence that he earned $3,250 per month, indicating that he had the resources to do so. Juan's failure to contribute to meeting F.A.'s emotional and

physical needs continued despite Blanca's inability to work since 2007, due to blindness caused by her diabetic condition. Rather, the F.A.'s adult siblings had helped with home expenses.

Juan also agreed to a temporary restraining order on July 18, 2008, that, among other things, named Blanca temporary sole managing conservator of F.A.; ordered him to pay child support, health insurance premiums for coverage for F.A., and an equitable portion of F.A.'s uninsured medical expenses; ordered him to pay spousal support until a final decree was signed; and awarded Blanca possession of the couple's residence, as well as the furniture, furnishings, and personal property at the residence while the case was pending, and enjoined him from entering or remaining on the premises of the residence and exercising possession or control of the personal property except by court order.

Viewing the evidence in light of the *Holley* factors, we hold that the trial court did not abuse its discretion in naming Blanca sole managing conservator of F.A. with visitation as mutually agreed upon.

We overrule Juan's fifth issue.

### 5. Evidence to Support the Trial Court's Property Division

In his sixth issue, Juan complains that the evidence is insufficient to support the trial court's division of the marital estate.

In a decree of divorce, the trial court is required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE ANN. § 7.001 (Vernon 2006); *Leax v. Leax*, 305 S.W.3d 22, 33–34 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981)). The trial court has broad discretion in making a "just and right" division of the community estate, and its discretion will not be disturbed on appeal unless a clear abuse of discretion is shown. *Leax*, 305 S.W.3d at 34; *see also Chafino v. Chafino*, 228 S.W.3d 467, 472 (Tex.App.-El Paso 2007, no pet.) ("It is the reviewing court's duty to presume that the trial court properly exercised its discretion in dividing the estate.").

In determining whether the trial court abused its discretion in making the property division, we look to whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules and principles. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex.App.-Houston [14th Dist] 2000, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)). We must determine whether (1) the trial court had sufficient information upon which to exercise its discretion and (2) the trial court abused its discretion by causing the property division to be manifestly unjust or unfair. *Id.* "A trial court does not abuse its discretion when some evidence of a probative and substantive character exists to support the division." *Newberry*, 146 S.W.3d at 237.

When the circumstances demonstrate a reasonable basis for it, a trial court may order an unequal division of community property. *Leax*, 305 S.W.3d at 34 (citing *Murff*, 615 S.W.2d at 698–99 & n. 1). A trial court may consider many factors when exercising its broad discretion to divide marital property, and it is presumed that it exercised its discretion properly. *Id.* (citing *Murff*, 615 S.W.2d at 699). Such factors include the nature of the marital property; the relative earning capacity and business experience of the spouses; their relative financial condition and obligations; their education; the size of separate estates; the age, health, and physical conditions of the parties; fault in breaking

up the marriage; the benefit the innocent spouse would have received had the marriage continued; and the probable need for future support. *Id.* (citing *Murff,* 615 S.W.2d at 699).

Juan complains that the evidence was insufficient to support the trial court's property division because neither party presented evidence of the value of the house or other assets held by the parties, including the amount of the insurance check, or of the expenses incurred by Blanca during their separation. However, the testimony offered at the trial regarding the parties' marital estate provided that the parties jointly owned the marital residence. It is undisputed that Blanca was still residing in that home and that she had paid all expenses relating to the home since the parties' separation more than ten years ago. Blanca also testified regarding certain personal property and the check for insurance proceeds resulting from hurricane damage to the house, which Blanca had in her possession and was in both of their names, but which Juan refused to endorse.

It is likewise undisputed that the agreed temporary orders of July 8, 2008 awarded Blanca possession of the couple's residence as well as the furniture, furnishings, and personal property at the residence while the case was pending. The final decree of divorce followed this provision in the agreed temporary orders. Furthermore, Blanca was ordered to pay, as part of the division of the estate, the balance due on the mortgage on the house and all charges on the real and personal property awarded her in the decree, except where the decree expressly provided otherwise. Juan was ordered to pay all of his own debts and obligations incurred solely by himself after December 1, 1998.

Even without a specific valuation on the house, trial court had sufficient evidence before it upon which to exercise its discretion in dividing the marital estate. The evidence provided the identity of the major assets and liabilities of the marital estate and their present condition. *See Evans,* 14 S.W.3d at 346. The evidence supported the trial court's determination to award Blanca possession of the house, the personal property in her possession, and the proceeds of the insurance check and to require that she pay the remainder of the mortgage. Blanca had paid all expenses relating to the house since 1998 and was at that time residing in the house with F.A., and the trial court's final decree followed the provisions of the parties' agreed temporary orders.

Furthermore, to the extent that the trial court's division of the estate was unequal, the record supports such a division. Blanca is diabetic and blind, uneducated, and unable to work. The evidence also indicated that Blanca continued to care for the couple's children throughout their ten-year separation without help from Juan, including the care of one minor child still residing in the home at the time of the default hearing, and that Juan had committed adultery and was primarily responsible for the breakup of the marriage. These factors all support the trial court's division of the marital estate. *See Leax,* 305 S.W.3d at 34 (citing *Murff,* 615 S.W.2d at 699). Thus, the trial court's division of the estate was reasonable.

Therefore, we overrule Juan's sixth issue.

## 6. Evidence to Support the Court's Award of Attorney's Fees

In his seventh issue, Juan asserts that the evidence is insufficient to support the trial court's award of $4,000 in attorney's fees in Blanca's favor.

A court may apportion attorney's fees in a suit affecting the parent-

child relationship. *See* TEX. FAM.CODE ANN. § 106.002 (Vernon 2008). Furthermore, a court may apportion attorney's fees in a divorce action as part of a "just and right" division of property. *Vazquez*, 292 S.W.3d at 86. The reasonableness of the fee awarded is a question of fact that must be supported by the evidence. *Id.* A judgment awarding attorney's fees may be supported solely by the attorney's testimony. *Id.*

■ Blanca's attorney testified that $4,000 of attorneys' fees had been accrued, of which Blanca had already paid $2,500. Of this amount, the trial court awarded $1,500 to Blanca's attorney and $2,500 to Blanca.

We overrule Juan's seventh issue.

### 7. Evidence to Support the Grant of Divorce on Grounds of Cruelty and Adultery

In his eighth issue, Juan claims that there is insufficient evidence to support the grant of divorce on grounds of cruelty and adultery.

#### a. Cruelty

■ A court may grant a divorce on the ground of cruel treatment. TEX. FAM. CODE ANN. § 6.002 (Vernon 2006). To be considered "cruel treatment," the conduct of the accused party must rise to such a level as to render the couple's living together insupportable. *Id.* "Insupportable," for purposes of "cruel treatment," means incapable of being borne, unendurable, insufferable, or intolerable. *Henry v. Henry*, 48 S.W.3d 468, 473–74 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Shankles v. Shankles*, 445 S.W.2d 803, 807 (Tex.Civ.App.-Waco 1969, no writ). Acts occurring after separation can support a finding of cruel treatment.

*Redwine v. Redwine*, 198 S.W.2d 472, 473 (Tex.Civ.App.-Amarillo 1946, no writ).

■ Blanca testified that, since she and her husband separated, he has been living with another woman. She further testified that since Juan left the home, he has provided no assistance of any sort with household expenses or child support, despite the fact that she was raising their four children. Although Blanca did not testify as to when she became disabled and blinded by diabetes, she testified as to her blindness and disability and that it prevented her from working. Furthermore, Blanca testified that she has had to look to her adult children for help with home expenses. This is more than a scintilla of evidence in support of the trial court's finding of cruelty as a ground for divorce.

#### b. Adultery

■ A divorce may be granted in favor of one spouse if the other spouse has committed adultery. TEX. FAM.CODE ANN. § 6.003 (Vernon 2006). "Adultery," as used in a divorce proceeding, means the voluntary sexual intercourse of a married person with one not the husband or wife of the offender. *Bell v. Bell*, 540 S.W.2d 432, 435 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ). Adultery may be proved either by direct or circumstantial evidence. *Miller v. Miller*, 306 S.W.2d 175, 176 (Tex.Civ. App.-San Antonio 1957, no writ). Mere suggestion and innuendo, however, are insufficient; clear and positive proof is necessary. *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex.App.-Dallas 2009, no pet.). Adultery is not limited to actions committed before the parties separated. *Bell*, 540 S.W.2d at 435.

■ The trial court had before it undisputed testimony that Juan had been living with another woman since Blanca and Juan separated in 1998 and that they

had a child together. This is not "mere suggestion and innuendo," but is some evidence to support the trial court's grant of divorce based on adultery.

We overrule Juan's eighth issue.

### 8. Child Support and Spousal Support in Excess of 50% of Earnings

In his ninth issue, Juan claims that the trial court erred in assessing child support and spousal support payments in excess of 50% of Juan's net monthly income. Juan points out that the current child support in the amount of $650 a month, coupled with retroactive child support in the amount of $150 a month, health insurance at $70 a month and spousal support of $780 a month, equals $1,650 per month, an amount slightly more than 50% of $3,250, the monthly amount of Juan's income as determined by Blanca's testimony. Juan claims that the trial court abused its discretion in imposing these obligations.

Juan cites to section 158.009 of the Family Code, which prohibits an order or writ of withholding that directs an obligor's employer to withhold more than 50% of the obligor's disposable earnings. See Tex. Fam.Code Ann. § 158.009 (Vernon 2008); id. § 8.106 (Vernon 2006). He cites to no law which stands for the proposition that it is an abuse of discretion for a trial judge to assess support in an amount greater than 50%.

The trial court signed two orders of withholding in this case. One pertains to withholding for child support, one for withholding for spousal maintenance. The order for child support specifically states that the "maximum amount to be withheld shall not exceed 50 percent of Juan Francisco Ayala's disposable earnings." It goes on to direct the employer that, if it receives more than one withholding order, it is to "pay an equal amount towards the current support portion of all order or writs until each is individually complied with, or until the maximum amount of

allowable withholding, 50 percent of Juan Francisco Ayala's disposable earnings, is reached, whichever occurs first." Thus the trial court has, in keeping with the Family Code provisions, ordered that the employer shall only withhold an amount up to 50% of the Juan's disposable earnings. See id.

We overrule Juan's ninth issue.

### Conclusion

We affirm the order of the trial court.

Justice SHARP, dissenting.

JIM SHARP, Justice, dissenting.

Mr. Juan Ayala's second point of error contends that the evidence is insufficient to support the trial court's award of $61,498 as retroactive child support.

That a parent may be ordered to pay retroactive child support is statutorily established. Tex. Fam.Code Ann. §§ 154.131, 154.009 (Vernon 2008). However, the basis for such an order's application of the child support guidelines is to be the net resources of the obligor during the relevant time period (that period for which the trial court granted retroactive child support). Id.; Flores v. Cuevas, 2007 WL 624716, at *4 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Absent evidence of obligor's earnings during the pertinent time, the trial court can neither consider nor calculate the obligor's net resources for that period. In re J.A.J., 283 S.W.3d 495, 500 (Tex.App.-Beaumont 2009, no pet.). Nor may the trial court calculate retroactive child support based on the obligor's current wages, but must presume that the obligor was making minimum wage for forty hours a week and calculate retroactive child support accordingly. See id.; Tex. Fam.Code Ann. § 154.068 (Vernon 2008); In re M.M., 980 S.W.2d 699, 700 (Tex.App.-San Antonio 1998, no pet.) (applying minimum wage presumption to retroactive child support award).

Blanca Ayala testified that Juan "currently" made $750.00 a week, but the trial court was presented no evidence of Juan's income during the relevant time period. Absent such evidence, the trial court should have presumed that Juan was making minimum wage for forty hours a week and calculated retroactive child support accordingly. *See Flores*, 2007 WL 624716, at *4. (In determining the amount of retroactive support, and in the absence of relevant evidence of earnings, "the trial court should have presumed that Flores had wages or salary during the relevant time period equal to the federal minimum wage for a 40–hour week.").

By granting child support on a different basis, with no evidence of Juan's net resources at the pertinent times, the trial court abused its discretion and the error appears on the face of the record. I would sustain Juan's second point of error and remand this case to the trial court for further hearings as necessary to establish whether the trial court should order retroactive child support and the amount, if any, that should be awarded. Accordingly, I dissent.