In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00151-CV
_____

IN THE INTEREST OF L.J.F.

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-226,912

**MEMORANDUM OPINION**

In two issues on appeal, appellant D.F., the father of L.J.F., complains that the trial court abused its discretion in awarding retroactive child support and by allowing J.J., the mother of L.J.F., to determine the child's primary residence without any geographic restriction. We affirm the trial court's order.

BACKGROUND

In June 2016, the Office of the Attorney General ("OAG") filed a petition for confirmation of the non-agreed child support review order for the benefit of L.J.F., and the OAG attached an acknowledgement of paternity executed by D.F. The record shows that the trial court conducted a negotiation conference and that D.F.

1

was notified but failed to appear. The trial court issued a child support review order acknowledging D.F. as L.J.F.'s father, finding that D.F. has a duty to support L.J.F., and ordering D.F. to pay $504 in child support each month beginning July 2016. The trial court appointed J.J. and D.F. joint managing conservators of L.J.F. and designated J.J. as the conservator with the exclusive right to designate the primary residence of L.J.F., and the trial court ordered J.J. to maintain L.J.F.'s primary residence in Jefferson County or any contiguous county. The trial court further found that D.F. owed retroactive child support in the amount of $6408 for the period of May 2015 to June 2016, and ordered D.F. to pay $85 per month beginning in July 2016 until the child support arrearage is paid in full.

In August 2016, D.F. requested a hearing to contest the confirmation of the non-agreed child support review order. D.F. complained about the terms of the order, including the retroactive child support award. In September 2016, the trial court held a hearing and entered a temporary child support review order, in which it ordered D.F. to pay $186 in monthly child support beginning October 2016, and found that D.F. owed $1699.26 in retroactive child support for the period of May 2016 to September 2016. J.J. appealed.

In May 2017, the trial court conducted a final hearing to determine the amount of child support and retroactive child support that D.F. was required to pay. The

record shows that D.F. testified that he has a bachelor's degree in social work and that he was making an annual salary of $43,000 while working as an investigator for Child Protective Services ("CPS"), but his job with CPS ended in August of 2016. According to D.F., CPS gave him the choice to either resign or be terminated due to his work performance. D.F. explained that he was making approximately $37,000 per year when LJ.F. was born on April 15, 2015. D.F. testified that at his last job, he worked as a general contractor doing maintenance work for approximately twelve weeks, and he earned $13.50 per hour and worked forty hours per week.

D.F. testified that he had received $12,000 in unemployment benefits since the summer of 2016, and that he was looking for a job. According to D.F., he never intended to stay on unemployment, and his parents are helping him out financially until he gets a job. D.F. explained that he is trying to get into the petrochemical industry, applies for jobs almost daily, and has registered with several temporary agencies. D.F. testified that he has also applied for jobs in Houston and that he may be relocating.

D.F. testified that he pays court-ordered child support for his other child. D.F. further testified that he pays $775 for rent, $350 for his car, $70 for his cell phone, and approximately $70 per week for groceries and gasoline. Concerning retroactive child support for L.J.F., D.F. testified that he has never lived with J.J. and that they

3

have been separated since May 2016, but D.F. claimed that he provided support to J.J. since L.J.F. was born. According to D.F., he gave J.J. $200 per month for daycare expenses from October 2015 until May 2016. D.F. provided the trial court with receipts showing that he had bought items for L.J.F., and although the trial court sustained J.J.'s counsel's objections to the admission of the receipts, the trial court allowed D.F. to explain what expenses he paid for L.J.F.'s care. The record showed that D.F. paid $186 per month in child support from October 2016 to May 2017 as ordered in the trial court's temporary order.

J.J. testified that she never lived with D.F., and that during the time period when D.F. failed to pay child support, D.F. gave her $200 per month for a three-month period to cover daycare expenses. J.J. further testified that D.F. paid some of L.J.F.'s medical bills and had bought some clothes and milk. J.J. testified that she wanted the trial court to set retroactive child support based on the salary D.F. earned while working for CPS, which was between $37,000 and $43,000 per year. J.J. explained that based on D.F.'s income during the time period when D.F. failed to pay child support, J.J. believed that D.F. should pay approximately $7400 in retroactive child support.

The trial court entered an order that designated J.J. as the conservator with the exclusive right to designate the primary residence of L.J.F. and ordered that J.J. may

4

determine L.J.F.'s primary residence without any geographic restriction. The trial court found that based on D.F.'s work history, D.F.'s gross monthly resources are $3000 and his net monthly resources are $2489, and the trial court ordered D.F. to pay $436 monthly in child support beginning June 2017.

Concerning the amount of retroactive child support to award, the trial court calculated that D.F. worked for CPS for seventeen months and that support was $525 per month during that time period. The trial court calculated three months of support at $350 based on D.F.'s construction job, and also calculated an additional five months at $160, which was based on minimum wage. The trial court determined that D.F. had made $1488 in payments and gave D.F. a $2000 credit for the retroactive child support. Based on the trial court's calculations, the trial court found that retroactive child support should be ordered for the period of April 15, 2015, to May 3, 2017, in the amount of $7467. The trial court ordered D.F. to pay $7467 in retroactive child support in the amount of $100 per month. D.F. appealed.

## ANALYSIS

In issue one, D.F. argues that the trial court abused its discretion by awarding retroactive child support in the amount of $7467. We review a trial court's decision awarding retroactive child support under an abuse of discretion standard. *Ayala v. Ayala*, 387 S.W.3d 721, 726-27 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

5

Under this standard, legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *In the Interest of R.T.K.*, 324 S.W.3d 896, 899-900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The trial court has broad discretion in setting retroactive child support, and we will not overturn a trial court's decision absent a clear abuse of discretion. *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex. App.—Houston [14th Dist.] 1992, writ denied). If there is some evidence of a substantive and probative character to support the trial court's award of retroactive child support, the trial court did not abuse its discretion. *Newberry v. Bohn-Newberry,* 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When, as in this case, the trial court does not file findings of fact and conclusions of law, we imply that the trial court made all findings necessary to support its judgment and will uphold those findings if supported by sufficient evidence. *In the Interest of A.B.*, 368 S.W.3d 850, 855 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Upon a final adjudication of parentage, the trial court may order a parent to pay retroactive child support. Tex. Fam. Code Ann. § 160.636(g) (West Supp. 2017). In ordering retroactive child support, the trial court must apply the child support guidelines together with any relevant factors. Tex. Fam. Code Ann. §§ 154.009(a), (b), 154.123, 154.131 (West 2014). The trial court must consider the net resources

6

of the obligor during the relevant time period, and it must also consider whether (1) the obligor had knowledge of his paternity, (2) the order of retroactive child support will impose an undue financial hardship on the obligor, and (3) whether the obligor has provided actual support or other necessaries before the filing of the action. *Id.* § 154.131(b). Section 154.131(c) provides that

> it is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of child support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child.

*Id.* § 154.131(c). This presumption can be rebutted by evidence that the obligor knew or should have known that he was the father of the child for whom support is sought and the obligor sought to avoid the establishment of a support obligation to the child. *Id.* § 154.131(d).

The Family Code instructs the trial court to calculate the obligor's net resources for the purposes of determining child support liability. *Id.* § 154.062(a) (West Supp. 2017). Courts may calculate the obligor's net resources based on imprecise information. *Ayala*, 387 S.W.3d at 727. There must be some evidence of a substantive and probative character of net resources for the court to discharge its duty. *Newberry*, 146 S.W.3d at 236. Here, the record shows that the trial court considered D.F.'s retroactive child support based on minimum wage and on the

different jobs D.F. worked during the relevant time period. The trial court also gave D.F. a $2000 credit for actual support that D.F. claimed he had provided to J.J. since L.J.F.'s birth. The evidence supports the trial court's award of $7467 in retroactive child support for the period between April 15, 2015 and May 3, 2017. *See Ayala*, 387 S.W.3d 727-28; *Newberry*, 146 S.W.3d at 235-36. We conclude that the trial court did not abuse its discretion in awarding retroactive child support in the amount of $7467. We overrule issue one.

In issue two, D.F. complains that the trial court abused its discretion by ordering that J.J. may determine L.J.F.'s primary residence without any geographic restriction. When a trial court renders an order appointing joint managing conservators, the trial court must designate which conservator has the exclusive right to determine the child's primary residence, and establish a geographic area within which the conservator shall maintain the child's primary residence, or specify that the conservator may determine the child's primary residence without regard to any geographic location. Tex. Fam. Code Ann. § 153.134(b)(1) (West 2014). The trial court has broad discretion in determining whether a conservator will have the exclusive right to establish the primary residence of a child without regard to geographic location. *See In the Interest of K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.).

The child's best interest shall always be the trial court's primary consideration in determining issues of conservatorship, and possession of and access to the child. Tex. Fam. Code Ann. § 153.002 (West 2014). A trial court may consider a parent's need to secure employment or pursue educational or career opportunities in exercising its discretion regarding geographical restrictions. *See Lenz v. Lenz*, 79 S.W.3d 10, 16 (Tex. 2002). D.F. testified that he may be relocating to Houston in order to secure employment. The trial court could reasonably have considered the likelihood that D.F. would be moving from Jefferson County in its deliberation regarding geographical restrictions. We conclude that the trial court did not abuse its discretion when it waived the geographical restriction. *See Lenz*, 79 S.W.3d at 16; *In the Interest of K.L.W.*, 301 S.W.3d at 428. We overrule issue two. Having overruled both of D.F.'s issues, we affirm the trial court's order.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 29, 2018
Opinion Delivered July 12, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.

9